JOHN K. LY (SBN 247477)
Email: jly@lianglyllp.com
LIANG LY LLP
601 South Figueroa Street
Suite 1950
Los Angeles, California 90017
Telephone: (213) 262-8000
Facsimile: (213) 335-7776

*Attorneys for Petitioner Yuan Hsu*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re Application of YUAN HSU, Petitioner, for an Order Pursuant to 28 U.S.C. § 1782 to Take Discovery for Use in Foreign Proceedings, Pursuant to the Federal Rules of Civil Procedure, of Respondents WELLS FARGO BANK, NATIONAL ASSOCIATION; JPMORGAN CHASE BANK, NATIONAL ASSOCIATION; U.S. BANK, NATIONAL ASSOCIATION; CITIBANK, NATIONAL ASSOCIATION; and BANK OF AMERICA, NATIONAL ASSOCIATION | Case No.:<br><br>**PETITIONER YUAN HSU'S MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR DISCOVERY IN AID OF FOREIGN LITIGATION PURSUANT TO 28 U.S.C. § 1782** |

## I.  INTRODUCTION

Petitioner Yuan Hsu (the "Petitioner") submits this Memorandum of Law in support of his *Ex Parte* Application for Discovery in Aid of Foreign Litigation Pursuant to 28 U.S.C. § 1782 (the "Application").  Petitioner seeks authorization to issue document subpoenas on Respondents Wells Fargo Bank, National Association ("WFB"); JPMorgan Chase Bank, National Association ("JPM"); U.S. Bank, National Association ("USB"); Citibank, National Association ("CB"); and Bank of America, National Association ("BOA") (collectively, the "Respondents"), each located in this District, for purposes of discovery in connection with a foreign criminal investigation being conducted in Taiwan (the "Taiwan Proceeding").  Copies of the Petitioner's proposed subpoenas are attached to the Application as **Exhibits A-E** (the "Subpoenas").  The discovery that Petitioner seeks is narrowly-tailored and necessary for the just, fair, and efficient resolution of the Taiwan Proceeding.  Accordingly, and for the reasons discussed below, the Petitioner respectfully requests that the Court grant the Application and permit Petitioner to serve the respective Subpoenas on WFB, JPM, USB, CB, and BOA.

## II.  BACKGROUND

Jing Feng (also known as Ying Feng) (the "Decedent"), born October 14, 1952, died intestate on December 19, 2020.  At the time of her death, she was a resident of Taiwan who was temporarily in Japan receiving treatment for lung cancer.  The Decedent's body was transported back to Taiwan where her funeral was held shortly thereafter. (Declaration of Yuan Hsu ("Petitioner Decl."), ¶¶ 5, 10-13; Declaration of An Hsu ("An Decl."), ¶¶ 10-12.)

The Decedent is survived by: (1) the Petitioner, the Decedent's husband; (2) Ping Hsu ("Ping"), the Decedent and the Petitioner's daughter; and (3) An Hsu ("An"), the Decedent and the Petitioner's son.  Under Taiwan's estate laws, the

Petitioner, Ping, and An share equally in the Decedent's estate. (Petitioner Decl., ¶ 14; An Decl., ¶ 13; Declaration of Hung Ou Yang ("Ou Yang Decl."), ¶¶ 12-14.)

As described below, however, immediately after the Decedent passed, Ping, *inter alia*, began dissipating the Decedent's estate to keep it out of the reach of the Petitioner and An. On December 28, 2020, only nine days after the Decedent died, Ping, or a person related to her (also collectively referred to herein as "Ping"), transferred $250,000.00 U.S. Dollars out of an online trading account with an account number ending in "7837" (the "TDA Account") that the Decedent held at TD Ameritrade Inc. ("TD Ameritrade"). On January 4, 2021, Ping transferred a further $191,132.23 U.S. Dollars out of the TDA Account. By this time, the TDA Account had all but been emptied. In total, Ping transferred **$441,132.23 U.S. Dollars** (collectively, the "Converted TDA Funds") from the Decedent's TDA Account after she had passed. The Converted TDA Funds were transferred to a separate bank account also belonging to the Decedent at WFB with an account number ending in "2328" (the "WFB Account"). (Petitioner Decl., ¶¶ 34-35; An Decl., ¶¶ 32-33; Ou Yang Decl., ¶¶ 19-20.)

Starting on or about January 3, 2021, Ping began transferring the Converted TDA Funds, and other funds, from the WFB Account to separate bank accounts. By February 19, 2021, Ping had transferred **$452,065.28 U.S. Dollars** (the "Converted WFB Funds") from the WFB Account to separate accounts held at WFB, JPM, CB, USB, and BOA. (Petitioner Decl., ¶¶ 37-39 & Ex. F; An Decl., ¶¶ 35-37 & Ex. F)

The Petitioner learned of Ping's theft of the Converted Funds as follows:

On December 27, 2020, Ping and others met with the Petitioner and demanded that he forfeit any entitlement to the Decedent's estate, reasoning that the Petitioner had made numerous failed investments in China and had thus dissipated the estate. (Petitioner Decl., ¶ 15; An Decl., ¶ 14.)

On a different date also in late December 2020, the Petitioner discovered that several articles were missing from the apartment the Petitioner and the Decedent shared in New Taipei City (the "New Taipei Apartment"). The missing articles included the Decedent's deeds of ownership to real properties in Taiwan, all the Decedent's legal seals, as well as all the Decedent's bank account passbooks, debit cards, and password sheets. Also missing were the Petitioner's and An's legal seals, account passbooks, debit cards, and password sheets. Other than the Petitioner and An, the only other living person who the Petitioner provided with the passcode to the New Taipei Apartment was Ping. (Petitioner Decl., ¶ 16; An Decl., ¶ 16.)

Next, on January 6, 2021, the Petitioner learned that someone had logged onto his online banking account with Yuanta Financial Holding Co., Ltd. ("Yuanta"), a Taiwanese financial services conglomerate, without the Petitioner's authorization, and attempted to transact on the account. The Petitioner's bank account passbook and debit card from Yuanta were among the items missing from the New Taipei Apartment, and the Petitioner's passcode sheet included the Petitioner's passcode to his Yuanta bank account. (Petitioner Decl., ¶ 17; An Decl., ¶ 17.)

On January 22, 2021, An, Ping, the Petitioner, and their respective lawyers met at the Land Bank of Taiwan, a state-owned Taiwanese bank, to witness the Decedent's safety deposit box, during which an officer from Taiwan's National Taxation Bureau was also present. On this occasion, Ping returned the Petitioner and An's legal seals and account passbooks to them, thus acknowledging that she had taken the above-referenced articles from the New Taipei Apartment. Further, Ping also produced a printout of a Microsoft Word document that was neither signed nor witnessed by anyone and thus not a legally valid testamentary instrument under Taiwan law. Ping contended that the printout was the

Decedent's will and indicated that she was entitled to any funds contained in the TDA Account.  (Petitioner Decl., ¶¶ 18-19; An Decl., ¶ 18)

On January 25, 2021, Ping informed the Petitioner and An that she had retained Glory Law Firm, a Taiwanese law firm, as her counsel.  Ping invited the Petitioner and An to meet with her and her lawyers.  On February 2, 2021, the Petitioner, An, Ping, and their respective counsels attended a meeting.  At this meeting, Ping and her counsel again contended that the unexecuted and unwitnessed document was the Decedent's will and that under the alleged will, Ping would inherit the Decedent's funds in the TDA Account even though Ping also contended that she had no actual knowledge of the TDA Account. (Petitioner Decl., ¶¶ 20-21; An Decl., ¶ 19.)

On February 18, 2021, the Petitioner and An discovered that $293,255 New Taiwan Dollars had been withdrawn from the Decedent's bank account on December 24, 2020 at the Taiwan Business Bank, a Taiwanese bank, through transfers initiated at an ATM in Taiwan.  The Petitioner and An were able to obtain camera images from the ATM used to initiate the fund transfers from the Decedent's Taiwan Business Bank account.  The images, which are produced, show Ping transacting on the Taiwan Business Bank account at the ATM in question. (Petitioner Decl., ¶ 22 & Ex. A; An Decl., ¶ 20 & Ex. A.)

As a result of some of the above-referenced events, the Petitioner and An began to conduct an investigation into the TDA Account. (Petitioner Decl., ¶¶ 23-32; An Decl., ¶¶ 21-30.)  Under Taiwan's legal system, a criminal proceeding is often initiated by one or more complainants who file a criminal complaint with a public prosecutor.  If a public prosecutor "because of [a] complaint, report, voluntary surrender, or [for] other reason[s]," suspects an "offense [has] been committed," then the prosecutor "shall immediately begin an investigation."  Based upon the investigation, if the prosecutor has probable cause to believe that a

1  crime has been committed, then the prosecutor must file an indictment with a
2  competent Taiwanese court. (Ou Yang Decl., ¶ 17.)

3  On March 3, 2021, the Petitioner and An filed a criminal complaint – the Taiwan Proceeding – against Ping with the Taipei District Prosecutor's Office. In the Taiwan Proceeding, the Petitioner and An allege that Ping engaged in embezzlement and theft in connection with their interests in the Decedent's estate, including with respect to the TDA Account. The Taiwanese prosecutor handling the file indicated both a need and an interest for additional evidence showing that the Converted TDA Funds were transferred out of the TDA Account, and if so, whether the Converted TDA Funds were eventually transferred to Ping or a related party. (Petitioner Decl., ¶¶ 32-33; An Decl., ¶¶ 30-31.)

On that basis, on September 15, 2021, the Petitioner filed an application under 28 U.S.C. § 1782 for discovery in aid of a foreign proceeding in this Court against TD Ameritrade. On September 28, 2021, this Court granted the Petitioner's application to serve a document subpoena (the "TDA Subpoena") on TD Ameritrade relating to the transfers out of the TDA Account. On October 1, 2021, the Petitioner served TD Ameritrade with the TDA Subpoena. On October 15, 2021, TD Ameritrade provided the Petitioner with documents responsive to the TDA Subpoena (collectively, the "TDA Documents"). (Petitioner Decl., ¶ 34 & Ex. E.); An Decl., ¶ 32 & Ex. E.)

Through the TDA Documents, the Petitioner and An determined that Ping had transferred the Converted TDA Funds from the TD Account to the WFB Account. (Petitioner Decl., ¶ 35; An Decl., ¶ 33; Ou Yang Decl., ¶ 20.) As a result, the Taiwanese public prosecutor indicated a need and interest for additional evidence showing whether the Converted TDA Funds were transferred out of the WFB Account, and if so, whether the Converted TDA Funds were eventually transferred to Ping or a person associated with Ping. (Petitioner Decl., ¶¶ 34-36; An Decl., ¶¶ 32-34.)

-5-
MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

On that basis, on May 10, 2022, the Petitioner filed an application under 28 U.S.C. § 1782 for discovery in aid of a foreign proceeding with this Court against WFB. On May 12, 2022, this Court granted the Petitioners' application to serve a document subpoena (the "WFB Subpoena") relating to, *inter alia*, the transfers out of the WFB Account. On the same date, the Petitioner served WFB with the WFB Subpoena. On June 14, 2022, June 15, 2022, and February 3, 2023, WFB provided the Petitioner with documents responsive to the WFB Subpoena (collectively, the "WFB Documents"), which the Petitioner shared with An, his Taiwanese counsel, and the public prosecutor. (Petitioner Decl., ¶ 37 & Ex. F; An Decl., ¶ 35 & Ex. F.)

Included in the WFB Documents are copies of checks drawn on the WFB Account. Twenty-four of those checks are dated, and were deposited, on or after January 3, 2021, fifteen days after the Decedent had passed (the "Decedent's Checks"). Twenty-one of the Decedent's Checks are issued to Ping Hsu; three of the Decedent's Checks are issued to Ping's husband, James Chen ("James"). (Petitioner Decl., ¶ 38; An Decl., ¶ 36.)

Also included in the WFB Documents is a Declaration of an WFB employee with respect to the deposits of the Decedent's Checks. Of the Decedent's Checks: (1) fifteen were deposited into five separate accounts at WFB; (2) three were deposited into an account(s) at JPM; (3) three were deposited into an account(s) at USB; (4) two were deposited into an account(s) at CB; and (5) one was deposited into an account at BOA (collectively, the "Subject Accounts). In total, the Decedent's Checks withdrew **452,065.28 U.S. Dollars** (the "Converted WFB Funds") from the WFB Account, which were then deposited into the Subject Accounts. (Petitioner Decl., ¶ 39; An Decl., ¶ 37.)

The WFB Documents are consistent with the Petitioner's initial reasonable suspicions – the Converted TDA Funds were transferred by Ping out of the TDA Account after the Decedent had passed – but do not conclusively prove that the

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Converted TDA Funds, and later, the Converted WFB Funds, were transferred to Ping herself as the WFB Documents do not reveal who is the owner(s)/beneficiary(ies) of the Subject Accounts. While the Decedent's Checks are all issued to either Ping or James, Ping and James could have signed some or all of the Decedent's Checks over to a third party(ies). Moreover, as the Decedent's Checks deposited at WFB (fifteen) are all issued to Ping, and were deposited into five separate accounts at WFB, it is more likely that Ping signed over some of the Decedent's Checks to a third party(ies), rather than for Ping to have had five separate accounts at WFB. (Petitioner Decl., ¶ 40; An Decl., ¶ 38.)

Based on the WFB Documents, both Petitioner and An Hsu filed criminal complaints against James Chen with the Taipei District Prosecutor's Office, on July 8 and June 30, 2022 respectively, for his involvement in Ping's alleged embezzlement and theft. The complaints against James Chen have been joined to those made against Ping and will be investigated by the same public prosecutor. (Petitioner Decl., ¶ 38; An Decl., ¶ 36.)

Based on the above-referenced events, the Petitioner and An have a reasonable suspicion that after the Converted TDA Funds were transferred from the TDA Account to the WFB Account, after which the Converted WFB Funds were transferred to the Subject Accounts belonging to Ping or a related party, or an account of which Ping is a beneficiary. As such, the Taiwanese prosecutor has indicated a further need and interest in reviewing additional evidence showing that the Subject Accounts belong to Ping or a related party, or to an account of which Ping is a beneficiary, or if the Converted WFB Funds were eventually transferred from the Subject Accounts to a bank account belonging to Ping or a related party, or to an account of which Ping is a beneficiary. (Petitioner Decl., ¶¶ 40-41; An Decl., ¶¶ 38-39; Ou Yang Decl., ¶ 25.)

WFB has multiple branches in the Northern District of California, including branches located at 464 California Street, San Francisco, California 94104, and

1266 Market Street, San Francisco, California 94102. (Declaration of Hung Ou Yang ("Ou Yang Decl."), ¶ 26.).

JPM has multiple branches in the Northern District of California, including branches at 1500 Polk Street, San Francisco, California 94109, and 700 Market Street, San Francisco, California 94102. (Declaration of Hung Ou Yang ("Ou Yang Decl."), ¶ 26.).

USB has multiple branches within this District, including branches located at 2001 Mission Street, San Francisco, California 94110, and 443 Castro Street, San Francisco, California 94114. (Declaration of Hung Ou Yang ("Ou Yang Decl."), ¶ 26.).

CB has multiple branches within this District, including branches located at 451 Montgomery Street, San Francisco, California 94104, and 99 Post Street, San Francisco, California 94104. (Declaration of Hung Ou Yang ("Ou Yang Decl."), ¶ 26.).

BOA has multiple branches within this District, including branches located at 1525 Market Street, San Francisco, California 94103, and 944 Stockton Street, San Francisco, California 94108. (Declaration of Hung Ou Yang ("Ou Yang Decl."), ¶ 26.).

### III. ARGUMENT

28 U.S.C. § 1782 provides, in relevant part, that:

> The district court or the district in which a person resides or is found may order him to give testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Applications for judicial assistance under 28 U.S.C. § 1782 should be freely granted in the interest of justice and comity. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004). "A district court's discretion is to be exercised in view of the twin aims of Section 1782: providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to our courts." *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. 08-05124, 2009 WL 88348, at *2 (N.D. Cal. Jan. 13, 2009) (citing *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83 (2d Cir. 2004)).

### A. The Three Statutory Requirements of Section 1782 Are Met.

To obtain discovery in aid of a foreign litigation, three statutory requirements of section 1782 must be met: (1) the person from whom discovery is sought must reside or be found in the district where the application is made; (2) the information sought must be "for use in a proceeding in a foreign or international tribunal"; and (3) the petitioner must be an "interested person" in the foreign proceeding. 28 U.S.C. § 1782; *see also Intel*, 542 U.S. at 246. Each of these requirements is satisfied here.

<u>First</u>, each of the Respondents reside in this District. As set out above, each of the Respondents have multiple branches in the Northern District of California. This Court has held that a legal entity with an office in a district "resides or is found" in the district. *See In re Ex Parte Application of Qualcomm Inc.*, 162 F. Supp. 3d 1029, 1036 (N.D. Cal. 2016) (holding that corporate entities were found in the district because they maintained "in-district offices"); *Super Vitaminas, S.A.*, Misc. Action No. 17-80125-SVK, 2017 WL 5571037, at *2 & n.1 (N.D. Cal. Nov. 20, 2017) (holding that a corporate entity was in touch in the district because it "operate[d two] corporate sales offices" there); and *In re Ex Part Application of TPK Touch Sols. (Xiamen) Inc.*, Misc. Action No. 16-80193-DMR, 2016 WL 6804600, at *2 (N.D. Cal. Nov. 17, 2016) (holding that a corporate entity was found in the district because it "maintain[ed] an office in th[e] district").

Second, the "for use in a proceeding in a foreign or international tribunal" requirement is also met. Section 1782 expressly provides for discovery in aid of a "proceeding in a foreign or international tribunal, *including criminal investigations conducted before formal accusation*." (Emphasis added). Indeed, that very language – "criminal investigations conducted before formal accusation" – was specifically incorporated into the statute by Congress in 1996. *See, Intel*, 542 U.S. at 259. The *Intel* court opined that "Nothing suggests that this amendment was an endeavor to rein in, rather than to confirm, by way of example, the broad range of discovery authorized" under section 1782, and that section 1782(a) does not limit the provision of judicial assistance to "pending adjudicative proceedings." *Id.* at 258-59. Thus, Congress specifically contemplated, and the statute expressly provides, that section 1782 may be used in circumstances where putative criminal activity is being investigated but formal charges have yet to be brought. This is precisely the case here. In the Taiwan Proceeding, the Petitioner has filed criminal complaints against Ping and James, and a Taiwanese public prosecutor has initiated a criminal investigation even though they have not yet been formally indicted of a crime. The prosecutor has indicated that there is a need and an interest for documents relating to the transfer of the Converted WFB Funds. Thus, the information the Petitioner seeks is for use in, and is directly relevant to, the Taiwan Proceeding. (Ou Yang Decl., ¶¶ 22-25.)

Third, the Petitioner is a complainant in the Taiwan Proceeding and therefore qualifies as an "interested person" under section 1782. In *Intel*, the Court held that "any interested person" is "intended to include not only litigants before foreign or international tribunals, but also foreign and international officials as well as any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining the assistance") (internal citations omitted). *Id.* at 256-57. In fact, the *Intel* court expressly held that a "complainant" qualifies as an "interested person." *Id.* at 246

("A complainant before the European Commission, such as AMD, qualifies as an interested person") (Internal citations omitted.)  Here, the Petitioner, a statutory heir of the Decedent's property, the Decedent's spouse immediately prior to her death, and a complainant in the Taiwan Proceeding plainly has a "reasonable interest" in obtaining assistance under section 1782.

**B.     The Court Should Exercise Its Discretion and Permit Petitioner to Obtain the Requested Discovery**

In addition to the three statutory requirements, district courts weigh four discretionary factors in determining whether to grant a request under section 1782: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, character of the proceedings, and the receptivity of the foreign government or court to U.S. federal-court judicial assistance; (3) whether the request "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (4) whether the discovery requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.  Again, here, each of these factors favors granting the Application.

The first factor favors granting the Application.  None of the Respondents are a party to the Taiwan Proceeding.  Further, the Petitioner cannot obtain documents from any of the Respondents for use in the Taiwan Proceeding pursuant to the mechanisms available to him under Taiwan law.  (*See* Ou Yang Decl., ¶¶ 26-29.)  Accordingly, this factor weighs in favor of granting the Application.  *See, e.g.*, *In re Digital Shape Technologies, Inc.*, No. 16-80150, 2016 WL 3913670, at *3 (N.D. Cal. July 20, 2016) ("Glassdoor is not a party to the Canadian Action, and therefore discovery regarding the … statement and its audience is unattainable absent Section 1782(a) aid.").

The second factor also favors granting the Application.  This factor "focuses on whether the foreign tribunal is willing to consider the information

sought." *In re Varian Med. Sys. Int'l AG*, No. 16-80048, 2016 WL 1161568, at *4 (N.D. Cal. Mar. 24, 2016) (citation omitted). "[W]hen evaluating whether foreign tribunals would accept U.S. assistance, courts look for authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of section 1782." *Siemens AG*, 2013 WL 5947973, at *3 (quotation marks and citation omitted).

Here, there is no reason to believe that the Taiwan courts would not be receptive to judicial assistance by U.S. federal courts. On the contrary, the Taiwan public prosecutor has expressed a strong interest and need for documents pertaining to the transfer of the Converted WFB Funds, and documents obtained pursuant to 28 U.S.C. § 1782 can be admitted at trial under Articles 289, 295, and 356 of the Taiwan Code of Civil Procedure. (Ou Yang Decl. ¶¶ 25, 30-31.). Thus, this factor favors granting the Application. *See Ambercroft*, 2018 WL 4773187, at *8; *In re Bracha Foundation*, No. 15-748, 2015 WL 6123204, at *4 (N.D. Ala. Oct. 19, 2015) *aff'd in relevant part by* 663 Fed. App'x 755 (11th Cir. 2016).

The third factor also favors granting the Application. The Application is made in good faith for relevant documents that are intended for use in connection with the Taiwan Proceeding. Neither the Petitioner nor the Taiwanese public prosecutor can obtain documents from any of the Respondents by application to the Taiwanese courts because, inter *alia*, each of the Respondents reside outside the Taiwanese courts' subpoena power, and not because of any procedural prohibitions. (*See* Ou Yang Decl. ¶¶ 27-29.) Further, as noted above, Taiwanese law allows relevant documents obtained in the United States pursuant to section 1782 to be admitted at trial under Articles 289, 295, and 356 of the Taiwanese Code of Civil Procedure. (*Id.*, ¶¶ 30-31.) Finally, the application for and use of material obtained under section 1782 are not contrary to Taiwanese public policy. (*Id.*, ¶¶ 12-14.) Thus, this factor weighs in favor of granting the Application. *See Ambercroft*, 2018 WL 4773187, at *8.

MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782

The fourth factor also favors granting the Application. The Petitioner's request for documents is narrowly tailored both in terms of scope and time, and seeks only information that is directly relevant to the Taiwan Proceeding. Specifically, such documents will support that Ping, or a person related to Ping, has transferred the Converted WFB Funds into bank accounts owned by Ping, or a party related to Ping, or of which Ping is a beneficiary. To the extent the document requests might implicate or require the production of sensitive or confidential information, the Petitioner is willing to enter into an appropriate protective order. Thus, this factor weighs in favor of granting the Application.

Finally, in addition to these four factors, the Court may also consider the overarching principles of section 1782. "Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel*, 542 U.S. at 247. While this legislation has undergone many amendments, these amendments have steadily and consistently moved the legislation in the singular direction of providing more, not less, discovery for use in more, not fewer, judicial and quasi-judicial forums in connection with more, not fewer, types of proceedings. *See id.* at 248-49. Applying these factors and considering the overarching principles behind the statute, this Court should exercise its discretion and permit Petitioner to obtain the discovery he seeks from each of the Respondents by granting the Application.

**C.**   **The Application Should Be Granted *Ex Parte.***

An application under Section 1782 is typically brought *ex parte*. *In re Societe d'Edute de Realisation et d'Exploitation pour le Traitement du Mais*, No. 13-80261, 2013 WL 6141655, at *1 (N.D. Cal. Nov. 21, 2013) ("Ex parte applications are appropriate for seeking discovery pursuant to § 1782."). If the petitioner shows that the three statutory factors are met and the discretionary factors weigh in the petitioner's favor, district courts will typically authorize

service of the subpoena. *See, e.g.*, *In re Rigby*, No. 13-0271, 2013 WL 622235, at *3 (S.D. Cal. Feb. 19, 2013) (granting *ex parte* section 1782 application); *In re Futurecorp Int'l Pty Ltd.*, No. 12-80267, 2012 WL 5818288, at *1 (N.D. Cal. Nov. 15, 2012) (same); *In re Republic of Ecuador*, No. 10-80225, 2010 WL 3702427, at *2-3 (N.D. Cal. Sept. 15, 2010) (same); *Cryolife*, 2009 WL 88348, at *5 (same). If any of the Respondents object, they may bring a motion to quash or motion for a protective order. *See In re Republic of Ecuador*, 2010 WL 3702427, at *2-3.

Here, the Petitioner has demonstrated that the three statutory factors are satisfied and the four discretionary factors weigh in favor of granting the Application. Thus, the Court should grant the Application *ex parte*.

## IV.   CONCLUSION

Because the statutory requirements of section 1782 are satisfied, and the four discretionary factors all weigh in favor of granting the Application, this Court should exercise its discretion to grant the Application and permit Petitioner to serve the Subpoenas attached as Exhibits A-E to the Application. *See Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002), *aff'd by Intel*, 542 U.S. 241 ("[A]llowance of liberal discovery seems entirely consistent with the two aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts.").

DATED: June 1, 2023                 Respectfully Submitted,
                                    LIANG LY LLP


                                    By: /s/ John K. Ly
                                        John K. Ly
                                        *Attorneys for Petitioner Yuan Hsu*

-14-
MEMORANDUM IN SUPPORT OF EX PARTE APPLICATION FOR DISCOVERY PURSUANT TO 28 U.S.C. § 1782